Good morning, Your Honor. May it please the Court, excuse me, my name is Dan Harbottle and I'm here representing the appellant, Garden Grove Unified School District. I'd like to reserve five minutes or so, depending on how the argument proceeds. This is a much simpler case than the one you just heard, but just as an important case. The way the issue is framed in the briefing is, I think, one of various ways it could be framed. But essentially the way it played out in the briefing was that in the face of a determination of a lack of compliance with the Federal Disabilities Act by a district, what is permissible on the part of a parent in filling that gap, the OAH judge who heard multiple days of trial, all the witnesses made credibility determinations and appropriateness determinations with respect to the educational program offered by the district, ruled that simply the private program offered by the parents, the guardian in this case, was partially appropriate to meet the student's educational needs. Therefore, partial reimbursement of that program was the appropriate remedy for that partial appropriateness. Let me ask you a question about sort of the law behind this. There's a Second Circuit case that says explicitly that to qualify for reimbursement, the parents or guardian do not have to show that the private placement furnishes every special service that the child needs. It's sufficient that it is an appropriate place that provides educational instruction that's designed to meet most or some of the child's needs. That's a paraphrase. Do you have any quarrel with that as the basic legal principle that we ought to apply? I would characterize it as a threshold that the law is very clear, and we would absolutely concede that the law is that parents or guardians do not need to meet the same, what's called the free and appropriate public education standard, a FATE standard that districts have to meet. That's a threshold question to get into the question of whether any reimbursement at all. Well, it seems to me I guess the legal question is whether a placement is proper, that's the statutory word, if it meets some of the child's needs. And I guess that's what I understand the Second Circuit to be saying, that a placement is proper if it meets some of the child's educational and special needs. That is perfectly appropriate. However, appropriateness is not a binary question. It's a continuum question. Appropriateness at least ought to be a continuum question. This is a relatively unique case. I want to make a distinction that I think is going to help Your Honor understand the argument we're making. There are two things in special education law, two primary categories of educational programming. There's a thing called a placement and there's a thing called services, related services or designated instructional services that support the placement offered. Placement is typically thought of as a school. In this case, the school district had offered a special day class for the student. Parents declined that. And by the way, that special day class was found appropriate by the district's offer of placement was found to be appropriate by the OAH and that was not overturned by the district court. That's placement. That's a school. Services support the placement. They permit the student to gain educational benefit via the placement. In this case, uniquely, instead of an alternative placement, the guardian enrolled the student in a service-only program. There are numerous admissions in the record. I don't need to read them, I'm glad to do it, but there are numerous admissions in the record that the guardian and her counsel did not ever consider the RLC, the Reading and Language Center, the service provider, to be a placement, a school. And I think this case, this Carter case from the U.S. Supreme Court, is perhaps the most instructive. In that case, the facts were very clear that the placement offered by the parent called Trident Academy did not have to meet every single procedural standard that the district would have had to meet, but it provided substantial compliance with the IDEA. And that is the standard that we believe applies here. And did, in this case, the alternative school provide that? No, it did not. The thing that's troubling to me is I don't quite understand. I mean, if it didn't meet it, it wasn't proper, then no attorney's fee should be afforded. Well, it's not fees, it's reimbursement for the program. Reimbursement cost, I'm sorry. So isn't it an all or nothing kind of situation? No, it's not, Your Honor. That's exactly the question, and the answer is no. Why not? Because if it's partially appropriate, then partial reimbursement should be applied. And there's a really very good policy reason behind it. Policy aside, where in the statute do you see that there's something either that it's more than proper or not proper? Well, let's look, for example, at Carter. In the statute, there's nothing that would answer this question. No, I want you to point to the statute. That's what I'm asking about. I don't want to hear about the cases. I want you to talk to me about the statute right now. The statute does not answer that question, and the cases have had to provide a gloss on it. The Burlington case was the first loss. The statute was such and is still such that if the Burlington, the U.S. Supreme Court in Burlington, had to determine whether or not any reimbursement for private programming was permissible, that case found, as an equitable matter, that yes, private reimbursement was appropriate. And since that time, most recently in the Carter case, the one that was most fundamentally in focus in this set of facts and in these courts, found that although Trident Academy did not comply with all procedures outlined in the IDEA, it was in substantial compliance with the substantive procedures or the substantive requirements. That's what the OAH judge determined. Well, we're dealing here with what the district court held right now. Specifically, what do you quarrel with in the district court's opinion that you think is improper? Very good. It's important to remember that the district court did not overturn a single factual finding of the OAH judge. Well, it conducted a trial. An oral argument. It's called a trial, but it's essentially an argument on the record, as we're doing here with one judge. And on an administrative record, which is before Your Honors in the excerpts. It's a trial on a record because additional evidence is submitted. Correct. If it is submitted and the court wishes to hear it, the court has discretion to hear it. So it's like social security appeals. I don't know about those, but in this case, typically it's sort of a quasi-appeal. What was this? It's sort of a quasi-appeal, and there's an oral argument on the record. But as for the quarrel and the error in the trial court's determination, it's very clear that the trial court misunderstood the basis for the OAH judge's determination. Let me ask you something about the trial court's error. It looks to me as though, at least verbally, there probably is an error. Because when I look at Florence County School District v. Carter, it looks as though first he has to say that the private placement is proper, and then he can make an equitable decision about how much of the expense should be reimbursed. And here what he did is he said it's partially proper, so he awarded partial reimbursement. Nevertheless, I don't really see why that error matters, because it looks as though he could say it's proper, but not entirely adequate to serve all the child's needs. Since that's so, I'm going to partially reimburse under my equitable power that follows the determination that it's proper. That's precisely what the OAH judge did, and that was entirely appropriate. The trial court, to answer Your Honor's question, made the error of misunderstanding the factual underpinnings of the OAH decision. The trial court essentially said only that it disagreed with what it understood the OAH judge to have done. It understood the OAH judge to have made a distinction, a technical distinction between what's called a non-public agency, just a certification requirement for a non-public agency versus a non-public school. That is important in terms of a prospective placement determination, but it's not important or it's only partially important with respect to the past reimbursement. Let me be sure that we are of one mind on the standard of review. You are wanting us very much to look at what the administrative law judge did. And as I understand it, we have at least two cases, one of which I was involved in, in which we held that we are not reviewing what the administrative law judge did. We are reviewing what the district court did, and we're reviewing that court for abuse of its discretion. That is correct. So you're on the same page. So we are reviewing the district court's decision, and we're reviewing it for abuse of discretion. Right. And the reason I raise what the OAH judge did in particular is because the trial judge adopted all of those findings. That's an important piece. Well, I think that really in terms of the underlying facts, the child's needs, and on a certain date this happened or that happened, it doesn't seem like there's really a factual dispute. And that's maybe why the exercise of discretion seems so important to me. If the issue is the following, the placement or the choice of a location in which to put this child by the guardian was proper, and the only issue is how much reimbursement is owed when it's proper but it doesn't meet all of the child's needs, then it seems to me that there's a wide range of discretion as to how much reimbursement, all the way from very little to everything. Well, there's, I suppose there's... Because, I mean, let me just finish the thought, because the alternative is to say, well, we'll give you partial reimbursement for this, but then if you also have a more expensive program that meets all of the needs, then you'll get all of the reimbursement. In other words, the district court here in the long run is basically saving the district money if all that is being reimbursed is a location that meets some of the child's needs, period, and they're not asking for the rest. Well, I don't agree with that conclusion from the premises. I do agree that there's discretion on both the OHS part and the trial judge's part. But, for example, I mean, this is a relatively extreme example. This case presents an important, potentially precedent-setting determination, by your honors, because this is not a situation where it was a private school that didn't offer performing arts or a private school that didn't offer social studies. This was not a school at all. Can the kid autism victims have different levels of improvability? Yes. Can this kid learn arithmetic? I mean, the school doesn't teach arithmetic. Can he learn it? Yes, and keep in mind that where I began this was to assert very clearly, and this has not been overturned, that the district's placement was appropriate, its offer of speech-language services for the student was appropriate, its offer of occupational therapy services for the student was appropriate. It would have placed the student in an actual school setting with services designed to address students with autism. So it was proper? It was proper. Yes. All right, well, once it's proper, and assuming it's an appeal to discretion on how much to award in reimbursement, doesn't the Carter case tell us that the district court exercises broad discretion and weighs the equitable considerations to determine how much reimbursement? I mean, you're not suggesting that the three of us should try and decide and second-guess Judge Lew. I mean, isn't he the person who really gets to decide how much reimbursement is appropriate? Let me make clear my last comment. That was the school district's. My client's offer was proper, according to both the OAH judge and the trial judge. The reading and language center, according to student's counsel themselves. Wait a minute. I thought it was undisputed here that the district did not, in fact, provide a free and appropriate education to this child. Is that correct or incorrect? That is correct. So then the question is, in the absence of the FAPE, the parent is entitled or the guardian is entitled to do something else outside the district that is private in nature. I'll leave aside whether we use the technical term placement or something else. The parent or guardian gets to put the child somewhere else after the district has, conceded the year, failed to offer a FAPE. So then the question becomes, and the only dispositive question, it seems to me, or the next in the series of logic is, is the thing that the guardian or parent did proper? I mean, it wouldn't be proper, presumably, to send them to summer camp in Australia, but it seems to me that you also have, at least in the briefing, conceded that at some minimal level this location, this placement, was proper. It just didn't offer everything, but it did offer autism services. It did not do that, Your Honor. It offered language-based, speech-language certification services. But let me... Well, I'm not well versed in all of the educational issues, but it was a proper placement to some degree. It was not a placement at all, Your Honor. And I know that the technical term is frustrating, but it's a critical term. Keep in mind this. This student was in a district placement for the 06-07 school year, and on top of that the student was receiving services from the RLC. In that context... So is it your contention that this child is receiving no education-related benefit from this program? No. It's very simple, that the OAH judge has discretion... No, I don't want to hear about the OAH judge. I'm sorry, because I want to know just your view of what the facts are. Is this child receiving services that are assisting in the child's education? Highly, highly truncated services. Okay, so the answer is yes, right? The answer is yes. Minimally. It's a yes or no question. The answer is yes. And it seems like your argument is that if the services being received are okay but small enough, then it's an abuse of discretion to reimburse for the whole cost. It is an abuse. It's an abuse of the student's educational rights, Your Honor. That's what it is. That's not before us. We're here about money. Well, yes and no. I mean, the district's here because of the order, but truly it's here because you have a student. Let's take a hypothetical. Well, suppose we agree with you. How is that going to help the student? All it does is save you money. It doesn't change anything. That's precisely the question. It incentivizes appropriate collaboration with the school district. I'm not sure I – let me tell you my problem. If I take your argument as the law and if I hypothesize, say, a state educational requirement that a child in the first grade should learn to read one-syllable words, to do arithmetic with single-digit numbers, and to learn basics of California and American history, and then I take a severely disabled child who at best is capable of learning toilet training and minimal speech, but there's no way he could learn reading of one-syllable words, basics of California and American history and arithmetic, I think you would say that if the school fails to offer a free and appropriate publication or public education and the parents put him in a facility for severely disabled children where he does, in fact, learn toilet training and minimal speech, that they should only be partially reimbursed because the facility they put him in doesn't teach California and American history and arithmetic and reading. No, I disagree with that. Okay, tell me – that's what I thought your argument meant, and tell me why it doesn't. The reason is because this – well, first of all, under the facts, those are not our facts, the unique needs of the student are what need to be addressed in both a parent's and a district's addressing of a student's educational needs. Every disabled student has identified unique needs, and those might be speech and language, they might be social skills, they might be occupational therapy, fine motor skills or gross motor skills or something like that. I think you're assuming he's normal except he has a deficiency in one area, but some disabled children are deficient in all areas and there are only a few where they can rise to any sort of function. That's true, and if in your hypothetical under a set of facts where the only – that the student was not capable of doing more and no facts were to the contrary, then that would be a different case. But here we have a student who's been kept out of school since the 06-07 school year. No placement, no core curriculum, no credits toward graduation. Is there anything school can do for him except stress him out? Yes, according to both the trial court, which upheld all the findings of the OEH, the district's offer of placement in its substantive form, in the form of a classroom, was appropriate under the law. But not uniquely so. Not uniquely so, but it was very clear, and the trial court adopted all the findings, that the RLC provided only a narrow band, addressed only a narrow band. Now that does prejudice the student. That keeps the student out of an actual classroom indefinitely, as long as the parent decides that he or she can get full reimbursement for that truncated premise. If we accepted that premise, wouldn't the answer be no reimbursement? No, because truly nobody is arguing that some minimal benefits were not provided. I guess my primary difficulty with your argument is that you wouldn't be in this pickle if you'd offered a free and appropriate public education, because then you would have offered all the things that you're saying the student should have, and we wouldn't be here. So it's only because of that failure that we're even having this discussion. So I guess I just have that basic difficulty. That is a difficulty, but it's an easy one to overcome. If you understand that the offered program, the only reason that the district's offer of faith was found to be inappropriate was that the explanation of the program to the guardian didn't fully explain why an SDC class was better than a general education class. It wasn't that the special education class was inappropriate. It was fully appropriate according to the judges. It was the failure to fully explain why the SDC class. Now, this is four years ago, and this student has not yet attended a full-time school. We understand your position. We've let you go eight minutes longer than your time, so I think it's time for us to hear from the appellee. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, I am Tanya Whiteleather. I represent CB, the appellee in this matter, and a 16-year-old student who is moderately affected with autism. I have listened to Mr. Harbottle's argument. What happened, and again, we are not here to review the underlying administrative due process hearing, but those findings were affirmed by the trial court. We are not appealing that, and neither has the appellant. Nobody has raised any issue contesting what was found in terms of the affirmation of the facts. Those facts included a clear finding that the school district failed to offer FAPE on a number of different areas, all identified in our brief, that the school district failed in the IEP offer to even address time in mainstream, which is an absolute and clear requirement under the IDEA when you have a student who is being moved, as was being proposed for this young man, from general education, where he had done well, to a special day class. That was one of the reasons that the IEP by the school district at the time of this issue was found to be inefficient, and one of the reasons that the school district was found, and it was affirmed, to have denied a FAPE. The appellant is arguing placement as if it is, I believe, a school placement. This young man was in a placement. He was at Reading and Language Center. It is a state-certified non-public agency authorized to provide the kinds of services that students with autism are desperately in need of. What is a placement in generic terms? How do you define it? Because if it matters as a term of art, there seems to be an argument about whether RLC counts as a placement or if it's just an amorphous something that's a program. In the special education world, we use placement to mean a location, a type of classroom, a general education classroom, an RST resources specialist program, an SDC, a special day class, a residential treatment center. That's in the special education world. For school districts, when parents provide services, when they provide tutoring in their home, we're not putting the standard, as we know from Carter. We don't apply the standard of a free, appropriate, and public education. And this requirement of a placement that is identified in an IEP document, I interpret it to be applied more loosely. A placement is where the student is getting the services. Counsel, let's assume that this child is fairly high, in a fairly good position on the autism spectrum, which I understand to be the case. He's not just someone where you hope for minimal language and toilet training and minimal adequate behavior. And let's assume that RLC really is very good for him, but that he could learn some arithmetic and some other things. Why didn't the district court abuse its discretion by awarding full rather than partial reimbursement so that either by going back to the school part-time or by going to another placement part-time, the child would also get the benefits that RLC, the Reading and Language Center, can't give him? The question, well, you start with the finding which has been affirmed, that there was no offer of FAPE. So without that written IEP with an appropriate offer of FAPE, saying this is the time the student will spend in mainstream, these are the services, there is no issue that was raised on appeal regarding that. There's been no challenge to the finding that the IEP and the offer of FAPE was inappropriate. So I don't know to what degree we've offended the child. No, the question is a different question, I think. I'm sorry. Well, at least I have a different question. And that is, it's a given that the district failed in its obligation, so now the guardian or the parent has the opportunity to put the child in a program or placement, whatever the proper term is. If the, this is the crux of the case, if the placement or the program meets some, but not all of the child's educational needs, what is the range of discretion for reimbursement that exists? I think the range of discretion is full. Why? Because I think, I don't think there is anything in IDEA that limits the court's discretion in making the award. And in this case. I thought it had equitable discretion to apportion it. Yes. But I don't think, if that's necessary, I don't think that even in the underlying decision, again, which was affirmed, the evidence to go back to that indicated that this young man's scores showed or were purported to show that he was mentally retarded, that he was a 64 IQ. And this is, again, in the underlying decision, which was affirmed. Following the reading and language center services, his reading comprehension scores rose dramatically. Academic, he was getting services that addressed his academic needs. His IQ testing rose to 89, which is now, it's low average. No, it's not a dead on 100. But probably because of, in part, his ability to understand. He has speech and language issues. Language comes first, and that's certainly important, what you said. But once you're up in the 80s, you can learn single digit arithmetic. You can certainly learn which numbers are greater than which other numbers. And it sounds like he doesn't get that. One of the major problems, again, there was no offer to fall back on. Equitable remedy, looking at what the district court has ordered, there was no finding that the services that provided him with these great gains, the RLC services were inappropriate. You're still not confronting the equitable concern that Judge Graber raised and that was also my concern. That, well, I think that the court. You want to have some incentive there and some money there to get the kid, the other education that he's capable of using. In this case, the aunt borrowed. She took out what she could. When she did not have what was later determined to be an appropriate offer for him, she took it on herself to borrow money. She couldn't borrow anymore. She doesn't have or didn't have the ability to reach into a pot of money and get more. And that's why we have these cases. She believed that what was offered, and she was proved to be right, was not of faith. She went out and addressed services that were proven to have been proper for him. There was no finding. So it sounds like part of what you're saying is that it's within the range of discretion to award the entire amount because it turned out that even though arithmetic isn't included, it turns out to be a fully appropriate program for this individual child in his current circumstance. And one of our concerns was that the administrative law judge had never said, well, we're going to make it 50 because. And often what we see from a court, an individual is entitled to a 50% award because 50% of the time was not appropriate. Everything, nothing was determined to be inappropriate, nothing. And all of the services we contend resulted in his great progress, which was documented in the record, which was affirmed by the court. So we believe very firmly all of the services that CB received contributed to great progress, documented, identified by the district court, to find otherwise also would be, I think, a real public policy problem. It's going to have a chilling effect on parents who cannot afford to provide everything that a public school has, the public school that is supposed to have resources and funding. We know funding is limited, but funding. The parent doesn't have access to all of that. So to tell a parent that when the district fails to offer FAPE, don't go out and provide a service that your child really needs because you probably won't be reimbursed simply because it doesn't meet all of his needs, I think is going to prove very chilling. Parents will not seek to help their children thinking of that because spend money and they may not recover. Thank you. Thank you, counsel. We used most of your time, it looks like, but we'll give you a minute for rebuttal. Thank you. I want to focus on the equitable question, and I do want to take issue briefly with the factual representation that was made that the OAH judge and therefore the trial judge who adopted all the findings did not render decisions with respect to the appropriateness of the RLC. They all did. And I want to direct you to pages, Excerpt Volume 2, pages 199 to 204. Specifically, both courts found that the SDC, the district's program, not the parent's alternative, the quote, an SDC would be more appropriate because student needs total support in the classroom, including prompting. That's paragraph 49, page 199. I looked at 199 of the excerpts, the appellant's excerpts, and I'm not finding what you just said. On the very first sentence. I'm sorry? Very first sentence, page 199. An SDC would be more appropriate because student needs total support in the classroom, including classroom prompting. Next paragraph. The level of IBI or ABA autism services offered to students by the district, the school district, would meet his needs. Next paragraph. Speech and language services. This is all beside the point, is it not? It's not your own. The school district didn't provide the necessary services. They went somewhere else. They didn't perhaps get everything that they could have. But if they had found another location that gave them everything, presumably that would have cost even more, and they'd be asking for more reimbursement, wouldn't they? Well, that's a hypothetical I can't answer, but it's not. But you're the one who's asking us to look at the policy incentives and how people might act, and that seems like a fair question. Well, I'm looking at the question of whether this student, having been found to need a classroom, having been found to need speech and language, having been found to need occupational therapy without dispute, having been found to need direct autism services, and all of those things having been found to be appropriate by the district. All of these are on a continuum. Once those findings are made, and four years has now passed, and the student has not been in a school, not earned a credit, not done anything that would lead to academic progress, other than the narrow strip, the narrow band, equity, it was an abuse of discretion not to apply a partial reimbursement standard for partial appropriateness. I don't understand something there. Let's hypothesize a school that says, we don't care what's the matter with the kid. He just goes into regular classrooms, does what he can, and if he misbehaves, he'll be expelled. Not a free, appropriate public education. The parent puts him in a facility that gives him some but not all. And then you're saying, dock the parent for not giving him all. And I don't see why that follows. Why wouldn't it follow that the parent is entitled to be reimbursed for everything he spends, up to all that the kid needs for an appropriate education? In that hypothetical, they might be. But that's why it's so important that your honors be aware of this continuum. It makes very much, it makes perfect sense that if, because the student's best interest or educational needs are the fundamental question. If, regardless of the district's initial obligation, if a student is being prejudiced by the program being provided, it's within the equitable discretion, especially of the court who heard the matter, to determine partial appropriateness should yield partial reimbursement. Otherwise, you don't get a student. There's a difference between, there are two kinds of partial appropriateness, and this is where I part company, I think, with your reasoning. There's the kind of partial appropriateness where the program in which the child is, is half good and half bad, either not educational at all, it's swimming trips or trips to the zoo that have no benefit, or it's bad for them in some other way. So that's a kind of partial appropriateness, where the thing you've chosen is half good and half bad. You have a different kind of partial here, where everything about it is good, it just doesn't give the child everything he needs. Well, let me just enclose it. So those are two different things? Here's a third. It's half bad because it doesn't address needs. That's where this judge came down. The appropriate outcome here is it is half bad, because it's letting all of his skills in the other areas that RLC does not address, by design and by admission, go to waste. I can see not compensating for taking the trip to Switzerland for vacation, but if reading costs $5,000, writing costs $5,000, and arithmetic costs $5,000, the school offers nothing, and the parent just gives the kid writing, because $5,000 is all she has, why shouldn't she get the five and be invited to spend an extra $10 and get him writing and arithmetic too? That really is the fundamental question. But I think the fundamental answer is, it's half bad because the student's educational opportunities were truncated, and it continues to be. Thank you, counsel. Thank you very much. These have been very interesting arguments. We're appreciative of both counsel's efforts. The case is submitted, and we will stand adjourned. All rise. This court is expected to stand adjourned.
judges: Zilly, Kleinfeld, Graber